UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SHELL GLOBAL SOLUTIONS (US) INC., and SHELL OIL COMPANY, § § § | |
| Plaintiffs, § | CIVIL ACTION NO. 4:09-cv-3778 |
| § | |
| v. § | JURY DEMANDED |
| § | |
| RMS ENGINEERING, INC., TESORO CORPORATION, and TESORO REFINING AND MARKETING COMPANY, § § § § § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

Pending before the Court is the Motion to Compel (Doc. No. 52) filed by Defendant Tesoro Refining and Marketing Company ("Tesoro"), in which it requests production of foreign patent prosecution documents. Upon considering the Motion, all responses thereto, the arguments of counsel made at a hearing on the Motion, and the applicable law, the Court concludes that the Motion should be denied.

**I. BACKGROUND**

Plaintiffs are Shell Global Solutions (US), Inc. and Shell Oil Company (collectively, "Plaintiffs"). Defendants are RMS Engineering, Inc., Tesoro Corporation, and Tesoro Refining and Marketing Company (collectively, "Defendants"). Plaintiffs own the patent-at-issue entitled "Process and Apparatus for Distributing Fluids in a Container," U.S. Patent No. 6,221,318 (the "'318 patent"). Plaintiffs allege that the spent catalyst distributor installed by Defendants in Tesoro's Salt Lake City refinery in 2007 infringes upon the '318 Patent.

Defendant Tesoro sent a request for production to Plaintiffs seeking production of "[a]ll documents relating to the preparation of all United States and foreign patent applications or equivalent to which the '318 Patent claims priority or [is] otherwise based." (Mot. to Compel ¶ 17.) Tesoro based its request for foreign patent prosecution documents upon Plaintiffs' internal documents reflecting that they sought patent protection for the invention that is the subject of the '318 patent in the following countries: Argentina, Australia, Brazil, Canada, China, France, Great Britain, Germany, Italy, Japan, Kosovo, Mexico, The Netherlands, Singapore, South Korean, Taiwan, and Venezuela. (Mot. to Compel ¶ 18 & Ex. 22A.)

Plaintiffs produced documents related to the prosecution of the '318 Patent in the United States but produced no documents relating to the prosecution of the invention in foreign countries. Plaintiffs contend that the foreign patent prosecution documents are in the possession of its foreign affiliates and associates. Plaintiff Shell Global Solutions (US) Inc. is wholly owned by Plaintiff Shell Oil Company.[1] Plaintiff Shell Oil Company, which is the record owner of the '318 patent, is wholly owned by Shell Petroleum Inc., a privately held Delaware corporation. Shell Petroleum Inc. is wholly owned by Shell Petroleum N.V. ("Shell N.V."), a privately held Dutch Corporation. Shell N.V. also owns Shell Internationale Research Maatsschappig B.V. ("Shell B.V."), which is the record owner of the foreign applications and patents that correspond to the '318 patent. Shell N.V. is wholly owned by Royal Dutch Shell plc. In sum, Plaintiffs (which own the '318 patent) and Shell B.V (which holds the foreign applications and patents) are both subsidiaries of a common parent entity.

---

[1] These facts, which are undisputed, are taken from the declaration of Eugene R. Montalvo, Senior Patent Counsel to Plaintiff Shell Oil Company. (Resp. to Mot. to Compel Ex. H (the "Montalvo Declaration")).

2

Defendant Tesoro moved to compel production of documents related to preparation and prosecution of foreign patents that correspond to the '318 patent. The motion has been fully briefed and is ripe for disposition.

## II.   LEGAL STANDARD

Rule 34(a)(1) of the Federal Rules of Civil Procedure provides that a party may serve on any other party a request to produce or permit the inspection of designated documents or electronically stored information that are "in the responding party's possession, custody, or control." "'Control' does not require that a party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control for discovery purposes when that party has the right, authority, or practical ability to obtain the documents from a nonparty to the suit." *Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.,* 171 F.R.D. 135 (S.D.N.Y. 1997); *Addamax Corp. v. Open Software Found.*, 148 F.R.D. 462, 467 (D. Mass. 1993); *Camden Iron and Metal, Inc. v. Marubeni America Corp.*, 138 F.R.D. 438, 442 (D.N.J. 1991). Under this principle, discovery can be sought from one corporation regarding materials that are in the physical possession of another, affiliated corporation. *See Securities and Exchange Comm'n v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 472 (S.D.N.Y. 2000).

Courts focus upon the nature of the relationship between a corporate party and its affiliate to determine whether the information sought from a corporate party's affiliate is in the party's custody and control. *Alcan Int'l Ltd. v. S.A. Day Mfg. Co.*, 176 F.R.D. 75, 78 (W.D.N.Y. 1996). Among the factors used by courts to determine whether one corporation may be deemed under control of another corporation are: (a) commonality of ownership, (b) exchange or intermingling of directors, officers or employees of the two corporations, (c) exchange of documents between

the corporations in the ordinary course of business, (d) any benefit or involvement of the non-party corporation in the transaction, and (e) involvement of the non-party corporation in the litigation. *Super Film of America, Inc. v. UCB Films, Inc.*, 219 F.R.D. 649, 655 (D. Kan. 2004). Courts applying these factors have ordered the production of documents from a litigating parent corporation's subsidiary, *see Gerlin Intern. Ins. Co. v. C.I.R.*, 839 F.2d 131, 140 (3d Cir. 1998), from a litigating subsidiary corporation's parent, *see Camden*, 138 F.R.D. at 444, and from a litigating corporation's sister corporation. *See Alimenta (U.S.A.) Inc. v. Anheuser-Busch Cos.*, 99 F.R.D. 309, 313 (N.D. Ga. 1983). The particular form of a corporate relationship does not exclusively govern whether a corporate party controls documents. *See Davis v. Gamesa Technology Corp.*, 2009 U.S. Dist. LEXIS 97507 (E.D. Pa. Oct. 20, 2009); *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 131 (D. Del. 1986).

The party seeking production of documents bears the burden of establishing the opposing party's control over those documents. *United States v. Intern. Union of Petro. & Indus. Wkrs.*, 870 F.2d 1450, 1452 (9th Cir. 1989)**.**

### III. ANALYSIS

Defendant Tesoro contends that the nature of the relationship between Plaintiffs and Shell B.V. indicates that Plaintiffs have control over the foreign patent prosecution documents held by Shell B.V. In response, Plaintiffs claim they do not have the legal right or practicable ability to obtain these documents from Shell B.V. We examine the factors relevant to determining this issue below.

#### A. Common Ownership, Management, Financial Reporting

Plaintiffs and Shell B.V. share a common owner in Shell N.V. In addition, Plaintiffs and Shell B.V. fall within the larger group of companies known as Royal Dutch Shell and are part of

4

Royal Dutch Shell's consolidated financial statements. The 2009 Annual Report for Royal Dutch Shell plc states that its Consolidated Financial Statements "include the financial statements of [Royal Dutch Shell plc] and its subsidiaries, being those companies over which the Company, either directly or indirectly, has control through a majority of the voting rights or the right to exercise control or to obtain the majority of the benefits and be exposed to the majority of the risks." (Reply to Mot. to Compel Ex. 2 at 101.) Consolidated financial reporting indicates that Plaintiffs and Shell B.V. are treated as offshoots of a global network of companies. *Alcan Int'l Ltd. v. S.A. Day Mfg. Co.*, 176 F.R.D. 75, 79 (W.D.N.Y. 1996). The common ownership and consolidated financial statements confirm that Plaintiffs and Shell B.V. are sister corporations. *See Uniden Am. Corp. v. Ericsson Inc.*, 181 F.R.D. 302, 305 (M.D.N.C. 1998). However, Plaintiffs do not share overlapping officers or board members. (Montalvo Decl. ¶ 7.) The lack of overlapping management indicates that the corporate relationship between the two is insufficient to find that Plaintiffs have legal authority over Shell B.V. *See Goh v. Baldor Elec. Co.*, 1999 U.S. Dist. LEXIS 209 (N.D. Tex. Jan. 13, 1999).

### B. Involvement in Transaction at Issue

With respect to Shell B.V.'s connection to the transaction at issue, our analysis depends on how we define the "transaction at issue." Shell B.V. does not appear to be involved in the underlying facts surrounding the alleged patent infringement. However, the foreign patents held by Shell B.V. are closely linked to the '318 patent, which is the patent-at-issue in this case, because they all correspond to the same invention. Although Plaintiffs' intellectual property attorneys filed and prosecuted the '318 patent separately from Shell B.V.'s filing and prosecution of the foreign patents, it appears that there is some level of coordination among Plaintiffs' and Shell B.V.'s employees regarding the '318 patent and its corresponding foreign patents. For

example, Shell B.V.'s Patent Portfolio manager created a document entitled "Maintenance review OC – December 2003, Patent assets sponsored by OGRC." (Reply to Mot. to Compel Ex. 4; Doc. No. 89 at 2.) The Maintenance Review, created with the cooperation of both Plaintiffs' and Shell B.V.'s intellectual property attorneys and technologists, compiles the various patents and patent applications across the world that are owned by both Plaintiffs and Shell B.V. (*Id.*) The Maintenance Review includes information about the '318 patent and its corresponding foreign patents in a single entry. (Reply to Mot. to Compel Ex. 4 at 48.) The document, prepared by a Shell B.V. employee, reflects the opinions of various technologists, including Plaintiffs' employees, of whether to prioritize or reduce the maintenance of certain patents. (*Id.*) All attorneys who have responsibility for the various patent portfolios have access to the document. (Doc. No. 89 at 3.)

Defendant Tesoro also points to a document prepared by David Brosten, an employee of Plaintiffs, where he indicates which patents in the Maintenance Review should be expanded to other countries, which should be maintained, and which should be limited or dropped. (Reply to Mot. to Compel Ex. 5.) Tesoro contends that this document further demonstrates that Plaintiffs' employee exerted influence and control over the foreign prosecution of the '318 patent.

Finally, Tesoro highlights dozens of articles that have been copyrighted by Shell B.V., relate to the invention that is the subject of the '318 patent, and have been produced by Plaintiffs in discovery. (Reply to Mot. to Compel, Ex. 3.) Of these articles, approximately twenty-six have been authored by W.M. van Poelje or G. van der Honing, who are named inventors of the '318 patent.

**C. Exchange of Documents in the Ordinary Course of Business**

Tesoro cites the Maintenance Review document as one that was exchanged between Plaintiffs and Shell B.V. in the ordinary course of business. Other emails also suggest that Plaintiffs' employees exchanged documents regarding the various patents held by Plaintiffs and Shell B.V. (Doc. No. 88 Exs. 2, 3, 4.) However, the various articles regarding the '318 patent's technology and copyrighted by Shell B.V. were not obtained by Plaintiffs directly from Shell B.V. Rather, Plaintiffs obtained these articles from a library of a different entity, Shell Global Solutions International B.V.,[2] and from LiveLink, an online repository of articles and research papers for access by employees of the Shell group of companies worldwide. (Doc. No. 89 at 2.) The libraries and LiveLink do not contain legal documents such as the prosecution histories of patents. (Doc. No. 89 at 4.)

### D. Intermingling of Employees

The Maintenance Review report, emails among employees of Plaintiffs and Shell B.V., and Plaintiffs' own statements regarding coordination among employees demonstrate that they interacted at some frequency regarding patents held by Plaintiffs and Shell B.V. In addition, the '318 patent, which is owned by Plaintiff Shell Oil Company, lists as named inventors W.M. van Poelje and G. van der Honing. These two individuals are employees of Shell B.V. (Doc. No. 88 at 3.) Val Poelje and van der Honing are also the authors of many of the articles copyrighted by Shell B.V. and produced by Plaintiffs during this litigation. (Reply to Mot. to Compel Ex. 3.) Similarly, Plaintiffs' employees, including David Brosten and Ye-Mon Chen, are listed as named inventors on foreign patents owned by Shell B.V. (Reply to Mot. to Compel Ex. 4 at 3.)

### E. Involvement or Benefit to Shell B.V. in the Litigation

---

[2] This entity is not described in the affidavit of Eugene Montalvo. We are unsure how it fits into the corporate structure of the Shell group of companies.

There is no indication that Shell B.V. will benefit directly from this litigation. Neither is there any indication that Shell B.V. has participated in this litigation.

Overall, it appears that the nature of the relationship between Plaintiffs and Shell B.V. is one of coordination and cooperation regarding the global management of the respective entities' intellectual property. Even though Plaintiffs and Shell B.V. possess separate management, they share a common owner and are included in consolidated financial statements. *See Alcan*, 176 F.R.D. at 79 (litigating entity and sister corporation members of unified worldwide business entity that issued consolidated annual financial report). Significantly, Shell B.V. and Plaintiffs maintain a close working relationship with respect to the subject matter of this lawsuit (patents) and the particular patent-at-issue in this case. This working relationship is demonstrated by the ongoing exchange of documents, technological expertise, and information about patents (including the patent-at-issue) among employees of these entities. Plaintiffs' employees are named inventors on foreign patents owned by Shell B.V., while Shell B.V.'s employees are named inventors on domestic patents owned by Plaintiffs. Plaintiffs' employees exert a significant level of influence over the global strategy of patent prosecution irrespective of the fact that some of the patents are owned by Shell B.V. *See Alcan*, 176 F.R.D. at 79 (litigating entity had regular contact with sister corporation regarding product sales and marketing).

The case of *Uniden* possess some similarities to the instant case. The plaintiff in *Uniden* sought documents possessed by the defendant's sister corporation. The court, in compelling production of the documents, found that the two sister corporations were under the common ownership and control by a parent corporation. 181 F.R.D. at 307. In addition, the sister corporations had overlapping officers to the extent that an officer of the non-litigating sister corporation possessed control over an officer of the litigating corporation. The sister corporations

8

exchanged documents in the ordinary course of business and in relation to the transaction that was the subject of the lawsuit. Finally, the non-litigating sister corporation was found to have an interest in the subject matter of the lawsuit. These factors supported the finding that the litigating sister corporation possessed Rule 34 control over documents possessed by the non-litigating sister corporation. *Id.*

Although there are similarities between the relationship between Plaintiffs and Shell B.V., on one hand, and the sister corporations in *Uniden*, on the other, there are also significant differences. There are no overlapping officers between the Plaintiffs and Shell B.V. and no sign that the management of U.S. entities exert control over Shell B.V. or vice versa. Plaintiffs and Shell B.V. exchange documents regarding their patent portfolios to some extent, but we do not have information as to whether the coordination and document exchange among their employees is a regular occurrence or merely a small part of their respective activities. Finally, there is no indication that Shell B.V. was involved in the events underlying the alleged patent infringement. *See, e.g.*, *Alimenta*, 99 F.R.D. at 310 (non-litigating sister corporation was "intimately involved" in contract that was subject of breach of contract suit between litigating plaintiff corporation and defendant); *Perini America, Inc. v. Paper Converting Machine Co.*, 559 F. Supp. 552 (E.D. Wis. 1983) (litigating corporation was sales agent for non-litigating corporation, which manufactured allegedly infringing machine).

Rather, we find the case of *Credit Bancorp* to be more analogous. 194 F.R.D. 469. In it, a plaintiff-intervenor sought discovery from a non-party securities brokerage-dealer of certain information held by the non-party's sister corporation, a Swiss bank. *Id.* at 470. Although information was sought under Rule 45, the court applied the same standard of "control" used in the Rule 34 context. *Id.* at 471 n.4. The non-party brokerage company had a trading account with

9

its sister bank that contained numerous securities and through which securities transactions took place. *Id.* at 470. The court found that the non-party brokerage company had access to the account sufficient to confirm that the account held a certain set of securities. However, the court also found that it was "not inconceivable" that the brokerage company would be unable to confirm whether a particular entity was the ultimate beneficial owner of the securities or on whose behalf a particular transaction was executed. *Id.* at 473, 474.

The evidence submitted by Defendant Tesoro demonstrates that Plaintiffs and Shell B.V. exchanged documents and regularly communicated about the global management and content of their patent portfolio. However, there is no evidence that Plaintiffs and Shell B.V. ever coordinated or exchanged documents regarding the underlying preparation and prosecution of patent applications, filings, and/or renewals. In fact, Plaintiffs testify through their intellectual property counsel that the patent filings and prosecutions of domestic patents are undertaken by domestic patent counsel separately from foreign patent prosecution and filing by foreign patent counsel. Thus, the communication about the global management of the companies' patents suggests, but does not compel, the conclusion that Plaintiffs could obtain from Shell B.V. the underlying documents related to the preparation and prosecution of foreign patents. At this juncture, Defendant Tesoro has not met its burden of establishing that Plaintiffs have the "practical ability" to obtain the foreign patent prosecution files from Shell B.V.

The facts present a close call regarding Plaintiffs' ability to obtain the documents sought from Shell B.V. We recognize the "strong American interest in not enforcing an invalid patent, for the effect would be to permit plaintiff to have an unwarranted, undeserved monopoly." *Soletanche and Rodio, Inc. v. Brown and Lambrecht Earth Movers, Inc.*, 99 F.R.D. 269, 271 (N.D. Ill. 1983). Moreover, as the parties invoking the jurisdiction of this Court to enforce its

patent rights, Plaintiffs should not be permitted to use the corporate boundaries of the whole owned subsidiaries of its foreign parent company to circumvent discovery. *Alimenta*, 99 F.R.D. at 313. To the extent that additional information relevant to the issues in this order becomes available, we would entertain additional argument at a subsequent date.

## IV.   CONCLUSION

Based on the foregoing, Tesoro's Motion to Compel (Doc. No. 52) is **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** in Houston, Texas, on this the 3rd day of August, 2011.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE